IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| JOE BOHANNON, | ) | |
| | ) | |
| Plaintiff, | ) | No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| CITY OF MILWAUKEE, Milwaukee Police | ) | |
| Chief EDWARD FLYNN, Milwaukee Police | ) | |
| Sergeant JASON MUCHA, Former Milwaukee | ) | |
| Police Officer MICHAEL VAGNINI, Milwaukee | ) | |
| Police Officer MATTHEW GADZALINSKI, | ) | |
| Milwaukee Police Officer JEFFREY DOLLHOPF, | ) | |
| Milwaukee Police Officer ERIN PERLEBERG, | ) | |
| and Unknown Milwaukee Police Officers, | ) | |
| | ) | |
| Defendants. | ) | Jury Demand |

**COMPLAINT**

Plaintiff, JOE BOHANNON, by his attorneys, People's Law Office and The Shellow Group, for his complaint against Defendants CITY OF MILWAUKEE, Milwaukee Police Chief EDWARD FLYNN, Milwaukee Police Sergeant JASON MUCHA, Former Milwaukee Police Officer MICHAEL VAGNINI, Milwaukee Police Officer MATTHEW GADZALINSKI, Milwaukee Police Officer JEFFREY DOLLHOPF, Milwaukee Police Officer ERIN PERLEBERG, and Unknown Milwaukee Police Officers, states:

**Jurisdiction and Venue**

1.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

2.     This Court has jurisdiction over federal claims pursuant to 28 U.S.C. § 1331 and state law claims pursuant to 28 U.S.C. § 1367.

1

3. Venue is proper under 28 U.S.C. § 1391(b). Defendant City of Milwaukee is a municipal corporation located within this judicial district. Additionally, the events giving rise to the claims asserted herein occurred within this judicial district.

**Parties**

4. Plaintiff Joe Bohannon is a 36 year old African American resident of the State of Wisconsin and the City of Milwaukee.

5. Defendant City of Milwaukee is a Wisconsin municipal corporation and is required to pay any tort judgment for damages for which its employees are liable for acts within the scope of their employment. Defendant City of Milwaukee is additionally responsible for the policies and practices of the Milwaukee Police Department.

6. Defendant Edward Flynn is and was at all times relevant to this action, the Chief of the Milwaukee Police Department, acting under color of law and within the scope of his employment. Defendant Flynn is being sued in his individual and official capacities.

7. Defendant Jason Mucha was at all times relevant to this action a sergeant in the Fifth District of the Milwaukee Police Department, acting under color of law and within the scope of his employment. Defendant Mucha is being sued in his individual capacity.

8. Defendants Michael Vagnini, Matthew Gadzalinski, Jeffrey Dollhopf, and Erin Perleberg were at all times relevant to this action employed as police officers in the Milwaukee Police Department and each was acting under color of law and within the scope of his or her employment. Each of these Defendants is being sued in his or her individual capacity.

9. Unknown Defendants are current and/or former officers of the Milwaukee Police Department.

**Facts**

10. On April 21, 2008, at approximately 9:00 p.m., Plaintiff Joe Bohannon was driving his brother's car on Teutonia Avenue in the City of Milwaukee when he was pulled over by Defendants Michael Vagnini and Matthew Gadzalinski.

11. Defendants Vagnini and Gadzalinski had no probable cause to believe that Plaintiff had committed or was committing any offense.

12. Defendant Vagnini walked to the driver's side of Plaintiff's vehicle, opened the door, pulled Plaintiff out, and ordered him to place his hands on the roof of the vehicle.

13. Defendant Vagnini, who had no probable cause or reasonable suspicion that Plaintiff possessed contraband on or about his person, pulled Plaintiff's pants and underwear back, and, in a public thoroughfare, with no privacy, reached his hand inside the back of Plaintiff's pants, and shoved his finger inside Plaintiff's anus.

14. Defendant Vagnini pulled a small plastic bag containing cocaine out of Plaintiff's anus, and it fell down Plaintiff's pant leg.

15. Defendant Gadzalinski, well aware of Defendant Vagnini's modus operandi, pattern and practice of conducting such invasive and unreasonable searches on African American men, stood by, watching, and took no action to intervene with Defendant Vagnini's invasive and unreasonable search of Plaintiff, even though he had the duty, ability, and opportunity to do so.

16. Defendant Vagnini is not a health care professional, and he conducted the invasive and unreasonable search in an unsafe, unhygienic, and intentionally humiliating fashion.

17. Defendant Vagnini had no warrant to conduct such a search on Plaintiff.

18. In an effort to prevent Defendant Vagnini from further assaulting him, Plaintiff elbowed Defendant Vagnini in his jaw and attempted to run away.

19. Defendants Vagnini and Gadzalinski tackled Plaintiff to the ground and punched and kicked him repeatedly on his body.

20. Defendants Dollhopf, Perleberg and other Unknown Defendant Officers arrived on the scene and joined Defendants Vagnini and Gadzalinski in punching and kicking Plaintiff on his body.

21. Defendants arrested Plaintiff and took him to the Fifth District Police station.

22. As a direct and proximate result of Defendants' actions, as detailed above and below, Plaintiff suffered and continues to suffer, *inter alia*, bodily injury, pain and suffering, extreme mental distress, anguish, humiliation, shame and fear.

### *Criminal Charges Against Vagnini, Dollhopf and Other Milwaukee Officers and Vagnini and Dollhopf's Convictions*

23. In 2012, the Milwaukee District Attorney's Office conducted a secret investigation into allegations of illegal body cavity and strip searches by Milwaukee police officers, during which they interviewed and reviewed statements of dozens of victims and witnesses.

24. In October of 2012, the State of Wisconsin charged Defendants Vagnini, Dollhopf and two other Milwaukee police officers who often worked with them, Jacob Knight and Brian Kozelek, with multiple felonies and misdemeanors related to illegal body cavity and strip searches of Milwaukee citizens.

25. Defendant Vagnini was charged with two counts of illegal cavity searches, eight counts of illegal strip searches, four counts of second degree sexual assault, one count of third degree sexual assault, two counts of fourth degree sexual assault, ten counts of misconduct in public office, and one count of false imprisonment.

26. Defendant Dollhopf was charged with three counts of misconduct in office, one

4

count of false imprisonment, and two counts of conducting illegal strip and body cavity searches as a party to a crime.

27. In April of 2013, Defendant Vagnini negotiated a plea in which the seven felony sexual assault charges were dismissed, and he pleaded no contest to four felony charges of misconduct in public office and four misdemeanor charges of conducting illegal strip and body cavity searches of African American men.

28. In June of 2013, Defendant Vagnini was sentenced to 26 months in prison and 34 months of extended supervision.

29. In October of 2013, Defendant Dollhopf negotiated a plea in which all of the felony charges were dismissed, and he pled no contest to disorderly conduct.

30. Jacob Knight was charged with one count of misconduct in public office and one count of conducting an illegal strip search. In July of 2013, Knight negotiated a plea in which the felony count of misconduct in public office was dismissed, and he pled no contest to one misdemeanor charge of illegal strip search.

31. Brian Kozelek was charged with two counts of misconduct in office, as well as false imprisonment and misdemeanor illegal strip search, both as party to a crime. In October of 2013, Kozelek negotiated a plea in which all of the charges were dismissed, and he pled no contest to disorderly conduct.

### *The City's Knowledge of Unconstitutional Cavity Searches*

32. As early as 2008, the Internal Affairs Division of the Milwaukee Police Department, as well as other authorities within the City of Milwaukee, were aware of numerous complaints about illegal and unconstitutional strip and body cavity searches of citizens.

33. The Internal Affairs Division ignored the clear and obvious pattern of illegal and

5

Case 2:13-cv-01224-AEG   Filed 10/31/13   Page 5 of 12   Document 1

abusive cavity and strip searches demonstrated by these civilian complaints, repeatedly rejected the complaints as meritless and refused to recommend discipline for the accused officers.

34. Subsequently, Milwaukee Chief of Police Flynn admitted, in April of 2013, that the Department had been receiving complaints for several years before it opened its own investigation of the allegations.

35. Milwaukee Police Department supervisors, including Sergeant Jason Mucha, also had knowledge of the numerous complaints of illegal strip and body cavity searches.

36. Undeterred by this knowledge, the policymakers, including but not limited to Defendants Flynn and Mucha failed to take any action to train, supervise or discipline the officers who committed these illegal searches.

37. Instead, supervisors rewarded several of the officers who engaged in these illegal searches with commendations for their aggressive police tactics, including commendations from Defendant Flynn.

38. Responsible authorities within the City of Milwaukee, including Defendant Flynn, concealed from the public and from judges, prosecutors and defense counsel that the Milwaukee Police Department had a *de facto* policy and practice which endorsed and encouraged illegal body cavity searches.

39. Following disclosure of the investigation by the Milwaukee District Attorney's Office of Milwaukee police officers for conducting unconstitutional and illegal body cavity and strip searches, the Milwaukee Police Department acknowledged its failure to adequately supervise and train its officers and changed its search policy to require authorization from higher ranking officials for each body cavity and strip search.

6

### Count I – 42 U.S.C. § 1983
### Unreasonable Search and Seizure

40. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

41. The actions of Defendant Vagnini in illegally searching and physically abusing Plaintiff violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count II – 42 U.S.C. § 1983
### Excessive Force

42. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

43. The actions of Defendants Vagnini, Gadzalinski, Dollhopf, Perleberg and the Unknown Defendant Officers in physically abusing Plaintiff by repeatedly punching and kicking him constituted unreasonable and excessive force and violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures, and caused the injuries set forth above.

### Count III – 42 U.S.C. § 1983
### Failure to Intervene

44. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

45. In the manner described above, Defendant Gadzalinski had the opportunity, duty and ability to intervene on behalf of Plaintiff during Defendant Vagnini's invasive and unreasonable search, but failed to do so and thereby caused the injuries to Plaintiff as set forth above.

### Count IV – 42 U.S.C. § 1983
### Conspiracy to Deprive Plaintiff of His Constitutional Rights

46. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

47. Defendants Vagnini, Gadzalinski, Dollhopf, Perleberg, and the Unknown Defendant Officers acting within the scope of their employment and under color of state law,

7

agreed between and among themselves to act jointly and in concert in order to deprive Plaintiff of his Fourth Amendment right to be free from unreasonable searches and seizures, as described in the various paragraphs of this Complaint.

48. In this manner, Defendants Vagnini, Gadzalinski, Dollhopf, Perleberg, and the Unknown Defendant Officers conspired by concerted action to accomplish an unlawful purpose by unlawful means.

49. In furtherance of the conspiracy, each of the co-conspirators engaged in and facilitated the unreasonable search and seizure of Plaintiff and was an otherwise willful participant in the joint activity.

50. As part of this conspiracy, Vagnini, Gadzalinski, Dollhopf, Perleberg, and the Unknown Defendant Officers agreed to conceal from responsible authorities that they had committed, in this case and several others, unlawful body cavity searches.

51. The misconduct described in this Count was undertaken willfully, intentionally, and/or with reckless indifference to Plaintiff's rights.

52. As a direct and proximate result of Defendants' conspiracy and actions in furtherance of the conspiracy, Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures was violated and he suffered the injuries set forth above.

### Count V – 42 U.S.C. § 1983
### *Monell* Policy and Practice Claim

53. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

54. The actions of Defendants Vagnini, Gadzalinski, Dollhopf, Perleberg, and the Unknown Defendant Officers, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the City of Milwaukee, its Police Department, its Fire and Police Commission, its Internal Affairs Division and/or its Police Chief.

55. At all times material to this complaint Defendant City of Milwaukee and its Police Department, Fire and Police Commission, Internal Affairs Division and/or Police Chief had interrelated *de facto* policies, practices, and customs which included, inter alia, a) the failure to properly hire, train, supervise, discipline, transfer, monitor, counsel and otherwise control police officers who commit unreasonable searches and seizures; b) the police code of silence; and/or c) the encouragement of unreasonable searches and seizures and wrongful arrests.

56. The policy, practice, and custom of a police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, despite their obligation to do so, and also includes police officers either remaining silent or giving false and misleading information during official investigations in order to protect themselves or fellow officers from internal discipline, civil liability, or criminal charges, and to perjure themselves in criminal cases where they and their fellow officers have falsely arrested and/or unreasonably searched a criminal defendant.

57. The *de facto* policies, practices and customs of failing to properly hire, train, supervise, monitor, discipline, counsel and control police officers, the code of silence, and the encouragement of unreasonable searches and seizures and wrongful arrests are interrelated and exacerbate the effects of each other to institutionalize police lying and immunize police officers from discipline.

58. At the time of the incident giving rise to this complaint, officers of the Milwaukee Police Department, as a matter of widespread practice so prevalent as to constitute a municipal policy, abused citizens on a regular basis in a manner similar to the abuse inflicted on Plaintiff, as set forth in this Complaint, yet the Milwaukee Police Department made findings of wrongdoing by officers in an exceedingly small number of cases.

59. Additionally, the involvement in, and ratification of, the unconstitutional actions of the Defendants by municipal supervisors and policymakers, as well as by a wide range of other police officials, officers, and divisions of the Department, including its Internal Affairs Division, further establishes that these acts were part of a widespread municipal policy, practice and custom. This involvement and ratification is further demonstrated, *inter alia*, by the Department's failure for several years to investigate the unconstitutional conduct of the Defendants and other officers, or to discipline them in this or other cases for their unconstitutional conduct.

60. The aforementioned policies, practices and/or customs of failing to hire, train, supervise, monitor, discipline, counsel and control police officers, the police code of silence, and the encouragement of unreasonable searches and seizures and wrongful arrests, separately and together, proximately caused injury to the Plaintiff in this case, *inter alia*, because the Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that these denials would go unchallenged by these supervisors and fellow officers, from the Police Chief, Fire and Police Commission, on down, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional conduct. Although dozens of citizens formally complained to the Milwaukee Police Department, detailing the policy, pattern and practice, for years the Department failed to investigate or take adequate responsive action.

61. But for the belief that they would be protected, both by fellow officers and by the Department, from serious career consequences, the Defendants would not have engaged in the conduct that resulted in the injuries to Plaintiff.

62. Said interrelated policies, practices and customs, as set forth above, both

individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

## Count VI – 42 U.S.C. § 1983
### Supervisory Liability

63. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

64. Defendants Flynn and Mucha knew or reasonably should have known that the Defendant Officers would violate citizens' constitutional rights in one or more of the ways described above, and/or knew or reasonably should have known that the Defendant Officers had a pattern of engaging in improper searches, including public strip and cavity searches.

65. Defendants Flynn and Mucha facilitated, approved, condoned, turned a blind eye to, and/or purposely ignored the Defendant Officers' pattern of misconduct.

66. As a result of this misconduct Plaintiff suffered the damages set forth above.

## Count VII – Indemnification

67. Plaintiff repeats and realleges the foregoing paragraphs as if fully set forth herein.

68. Wisconsin law, Wis. Stat. § 895.46, requires public entities to pay any tort judgment for damages for which employees are liable for acts within the scope of their employment.

69. At all times relevant to this action, Defendants Vagnini, Flynn, Mucha, Gadzalinski, Dollhopf, Perleberg and the Unknown Defendant Officers committed the acts alleged above in the scope of their employment with the City of Milwaukee.

WHEREFORE, Plaintiff Joe Bohannon asks that this Court enter judgment in his favor and against Defendants City of Milwaukee, Chief of Police Edward Flynn, Sergeant Jason

11

Mucha, former Milwaukee Police Officer Michael Vagnini, Milwaukee Police Officers Matthew Gadzalinski, Jeffrey Dollhopf, Erin Perleberg, and Unknown Milwaukee Police Officers, awarding compensatory damages, attorneys' fees, and costs against each Defendant, and punitive damages against each of the individual Defendants, as well as any other relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, JOE BOHANNON, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: October 31, 2013

Respectfully submitted,

/s/ Ben H. Elson
Ben H. Elson, IL Bar #6286106
John L. Stainthorp, IL Bar #3128243
Jan Susler, IL Bar #277840
Sarah Gelsomino, IL Bar #6298391
People's Law Office
1180 N. Milwaukee Ave.
Chicago, IL 60642
(773) 235-0070
ben.elson79@gmail.com

Robin Shellow, #1006052
The Shellow Group
324 West Vine Street
Milwaukee, WI 53212
(414) 263-4488
tsg@theshellowgroup.com

Attorneys for Plaintiff